UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES FEZZA and KENNETH MAY<br><br>Plaintiffs,<br><br>-against-<br><br>XPRESS GROUP, INC., GMMJ, INC. AND JAMIL NASSAR,<br><br>Defendants. | Civil Action No.: 15-CV-350<br><br>**SETTLEMENT AND RELEASE AGREEMENT** |

This Settlement and Release Agreement (the "Agreement") is made and entered into by James Fezza and Kenneth May (collectively, "Plaintiffs"), and Defendants Xpress Group, Inc., GMMJ, Inc., and Jamil Nassar (collectively, "Defendants"). Plaintiffs and Defendants may be referred to collectively as the "Parties".

WHEREAS, on August 4, 2015, Plaintiffs filed a Complaint in the United States District Court for the Western District of North Carolina (the "Court"), Case No. 15-CV-350 (the "Lawsuit"), captioned *James Fezza and Kenneth May against Xpress Group, Inc., GMMJ, Inc., and Jamil Nassar*. In the Lawsuit, Plaintiffs, by and through their counsel, Christopher Strianese of Strianese, PLLC ("Plaintiffs' Counsel") asserted claims under the Fair Labor Standards Act ("FLSA") and the North Carolina Wage and Hour Act ("NCWHA") for unpaid wages and other relief. On September 24, 2015, Defendants filed a Motion to Dismiss, Verified Answer and Affirmative Defenses denying liability.

WHEREAS, Defendants deny any liability or wrongdoing of any kind associated with Plaintiffs' claims but enter into this Agreement to avoid the expense, inconvenience, burden, distraction and diversion of their personnel and resources, risk, and uncertainty of outcome that are inherent in any litigation, and to resolve fully and finally all of Plaintiffs' claims against them as described in this Agreement.

WHEREAS, Defendants have conducted an investigation into the allegations raised by Plaintiffs and evaluated the information elicited through their investigation in this matter and concluded that, despite Plaintiffs' good faith belief, Defendants are not liable for any of Plaintiffs' alleged damages, and Defendants have good defenses to all of Plaintiffs' claims.

WHEREAS, Plaintiffs and Plaintiffs' Counsel have performed a thorough study of the law and facts relating to Plaintiffs' claims and have concluded, based upon their investigation and discovery, and taking into account the sharply contested issues, the expense and time necessary to pursue an action through litigation and any appeal, the risks and costs of prosecution of any such litigation, and the uncertainties of complex litigation and any appeal, that a settlement with Defendants on the terms set forth herein is fair, reasonable, and adequate. Plaintiffs have agreed to settle all their claims on the terms set forth herein.

WHEREAS, the Parties intend to fully, finally, and forever settle, compromise, and discharge all disputes and claims which exist between Plaintiffs and Defendants based on, arising out of, or related to Plaintiffs' employment with Defendants.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Based on the above understandings, THE PARTIES HEREBY STIPULATE AND AGREE AS FOLLOWS:

## PAYMENT

1. In exchange for the promises, releases, and waivers made by Plaintiffs in Paragraph 2 below and throughout this Agreement, and in full and complete satisfaction of any and all claims that Plaintiffs had, have or may have based on, arising out of, or related to their employment with Defendants, Defendants agree to pay Plaintiffs and Plaintiffs' Counsel as follows:

   a. <u>Settlement Payments Representing Wages, Liquidated Damages and Attorney's Fees:</u>

   Defendants agree to pay Plaintiffs and Plaintiffs' Counsel on the payment date the gross amount of Thirty One Thousand Eight Hundred One and 86/100 Dollars ($31,801.86) as follows:

   i. *Payment to Plaintiff James Fezza*: Defendants agree to pay to Plaintiff James Fezza Six Thousand One Hundred Eighty-Three and 69/100 ($6,183.69) representing wages which shall be less applicable deductions and withholdings and for which Defendants will issue an IRS Form W-2;

   ii. *Payment to Plaintiff Kenneth May:* Defendants agree to pay to Plaintiff Kenneth May Thirteen Thousand Six Hundred Eighteen and 17/100 Dollars ($13,618.17) representing wages which shall be less applicable deductions and withholdings and for which Defendants will issue an IRS Form W-2;

iii. *Payment to Plaintiffs' Counsel:* Defendants agree to pay to Plaintiffs' Counsel for past, present and future attorney's fees, costs and expenses incurred in the representation of Plaintiffs in the Lawsuit, including the settlement thereof, the total amount of Twelve Thousand and 00/100 Dollars ($12,000.00). No taxes will be withheld from this payment. Defendants will issue an IRS Form 1099 to Plaintiffs and Plaintiffs' Counsel for that amount.

b. Allocation of Settlement Payments Set Forth In Paragraph 1: Defendants shall be responsible for preparing and filing IRS Forms W-2s and 1099s consistent with Paragraph 1(a) of this Agreement. Plaintiffs are responsible for paying appropriate taxes due on the payment received, and agree to fully indemnify and hold Defendants harmless for any local, state or federal income taxes, penalties, interest, fines, or assessments incurred by Plaintiffs as the result of any payment made pursuant to this Agreement as to which income taxes are not withheld.

c. Settlement Payment Does Not Trigger Additional Benefits: All payments pursuant to this Agreement shall be deemed to be paid to Plaintiffs solely in the year in which such payments are made by Defendant.

d. Plaintiffs understand and agree that they would not be entitled to receive the monies and benefits specified in this Agreement, except for their execution of this Agreement and fulfillment of all the promises contained herein that pertain to them.

e. Plaintiffs' Counsel retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorney's fees, costs and expenses to be paid to Plaintiffs' Counsel. Defendants shall not oppose Plaintiffs' Counsel's

appeal or motion for reconsideration so long as Plaintiffs' Counsel seeks an amount that does not exceed the payment contemplated in paragraph 1(a)(iii).

## RELEASE BY PLAINTIFFS

2.  In exchange for the promises made by Defendants throughout this Agreement, as of the Effective Date, and except as to rights or claims created by this Agreement, Plaintiffs, on behalf of themselves, their current, former and future heirs, spouses, executors, representatives, administrators, agents, assigns, successors, and attorneys, fully release and discharge Defendants and their respective present and former parent companies, subsidiaries, related or affiliated companies, shareholders, officers, directors, employees, members, managers, joint ventures, joint employers, employees, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors, and assigns, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity which could be jointly liable with any of them (collectively, "Releasees"), from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, costs, expenses, complaints or suits of any type or nature, whether known or unknown, based upon or relating to actions, omissions or events arising from or related to Plaintiffs' employment with any of the Releasees.

This general release of claims includes, but is not limited to: (i) claims directly or indirectly arising out of Plaintiffs' employment with any of the Defendants; (ii) any claims for compensation of any kind or nature, including the nonpayment or inaccurate payment of wages under any federal, state, local or international law (including, but not limited to, the FLSA and North Carolina labor law); (iii) any wage and hour claims which could have been alleged, including without limitation all claims for restitution and other equitable relief, liquidated damages, punitive damages, wages, penalties of any nature whatsoever, other compensation or

benefits, including 401(k) benefits or matching benefits, retirement or deferred compensation benefits claims on account of unpaid wages, overtime, and/or other compensation, and/or attorney's fees and costs; (iv) any claims of employment discrimination, retaliation, or harassment; (v) any claims pursuant to any other federal, state, local, or international statute, executive order, constitutional provision, regulation, or ordinance; and (vi) any claims based on tort.

3. By virtue of the foregoing, Plaintiffs acknowledge and agree that they have waived all relief available to them (including without limitation, monetary damages and equitable relief) under any of the claims being released in this Agreement. In addition, Plaintiffs forever agree, to the maximum extent allowable by law, that they will not institute, nor accept any other relief or benefit from, any other suit, class or collective action, administrative claim, or other claim or proceeding of any sort or nature whatsoever against Defendants, relating to the claims being released herein.

4. Plaintiffs expressly waive any claim or right to assert hereafter that any claim, demand, obligation, and/or cause of action has, through ignorance, oversight or error, been omitted from the terms of this Agreement.

5. Plaintiffs warrant that other than the Lawsuit, they have not commenced, or been party to, any action or proceeding or filed any such administrative charges or court complaints or proceedings of any kind (on their own behalf and/or on behalf of any other person and/or as a member of any class or collective of persons) against or involving the Releasees or any of them individually.

6. Plaintiffs acknowledge and agree that, pursuant to the FLSA and similar state laws and regulations, the Settlement Payments set forth in Paragraph 1, above, cover, among

other things, compensation (including any alleged amounts for liquidated damages and attorney's fees) for all hours Plaintiffs worked for Defendants up until and including the effective date of this Agreement.

## DISMISSAL AND COURT APPROVAL

7. The Parties agree to cooperate and take all necessary and appropriate steps to dismiss the Lawsuit with prejudice and on the merits. Specifically, Plaintiffs shall prepare and file a joint motion (with Defendant's consent as to the content, which shall not be unreasonably withheld) for approval of the settlement described herein. The Parties agree that they will jointly request that the Court sign the Order of Dismissal attached hereto as <u>Exhibit A.</u>

## PAYMENT DATE

8. The Payment Date of this Agreement shall be thirty days after the Court approves this Settlement and Release Agreement and enters a final Order dismissing this case with prejudice.

## EFFECTIVE DATE

9. The Effective Date of this Agreement shall be the date as of which the Court approves this Agreement; provided, however, that if the Court does not approve this Agreement, and the basis for the Court's disapproval does not involve a material term of this Agreement, the Parties shall make good faith efforts to modify this Agreement so as to obtain the Court's approval; and provided, further that if the Court does not approve this Agreement and the reason for such disapproval pertains to materials terms of this Agreement, the Agreement shall be void ab initio. Notwithstanding, if the Court does not approve this Agreement as a result of the inclusion of the Non-Disparagement and Non-Solicitation provisions, as set forth below, the Parties agree that they will use good faith efforts to modify said provisions and to gain Court

Approval of the Agreement with the modified Non-Disparagement and Non-Solicitation provisions. In the event, after using such good faith efforts, the Court does not approve the Agreement with the inclusion of the modified Non-Disparagement and Non-Solicitation provisions, the Parties agree that said provisions shall be severed from the Agreement, and the Agreement, without the Non-Disparagement and Non-Solicitation provisions, shall be presented to the Court for approval. However, in the event the Non-Disparagement and Non-Solicitation provisions are severed from the Agreement, the Parties agree that the Settlement Payment to Plaintiffs for the inclusion of said clauses, as set forth below, shall not be paid to Plaintiffs.

## NON-DISPARAGEMENT AND NON-SOLICITATION

10. <u>Non-Disparagement</u>: Plaintiffs agree that they will not disparage (or induce or encourage others to disparage) the Defendants for reasons related to the claims alleged in the Lawsuit. For purposes of this Agreement, the term "disparage" means comments or statements to the press, on the internet, in the media and/or otherwise published, posted, or sent through any media (including social media), or to any individual or entity with whom the Defendants have a business relationship which would adversely affect that relationship or the reputation of the Defendants.

11. <u>Non-Solicitation</u>: Plaintiffs agree not to solicit or encourage current or former employees of Defendants to bring a lawsuit or other legal action alleging that the Defendants have violated the FLSA, NCWHA, and/or other state or local wage/hour laws, including, but not limited to, claims for unpaid wages.

12. <u>Additional Settlement Payment For Non-Disparagement and Non-Solicitation Provisions</u>:

    Defendants agree to pay to Plaintiffs One Thousand Six Hundred Ninety-Eight

and 14/100 Dollars ($1,698.14), which shall be split equally by the Plaintiffs, as full consideration for the inclusion of the Non-Disparagement and Non-Solicitation clauses as set forth in this Section, said settlement payment shall be in addition to the settlement payments set forth in paragraph 1 of this Agreement. The parties agree that if, after using good faith efforts, as set forth in paragraph 9 of this Agreement, the Court does not approve of the inclusion of both provisions in this Agreement, that Plaintiffs shall not be entitled to the receipt of the additional settlement payment set forth in this Section.

## PARTIES AUTHORITY

12. The signatories hereto hereby represent and warrant to the Parties that they are fully authorized to enter into this Agreement and bind the Parties hereto.

## MUTUAL FULL COOPERATION

13. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their best efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

## NO PRIOR ASSIGNMENTS

14. The Parties and their counsel represent, covenant, and warrant that they have not directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged except as set forth herein.

## NO ADMISSION

15. Nothing contained herein, nor the consummation of this Agreement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of the Defendants, or any of the Releasees. The Parties have entered into this Agreement solely with the intention to avoid further disputes and litigation with the attendance inconvenience and expense.

## ENFORCEMENT ACTIONS

16. In the event that one or more of the Parties institutes a legal action or other proceeding against any other party or Parties to enforce the provisions of this Agreement or to declare rights and/or obligations under this Agreement, the successful party or Parties shall be entitled to recover from the unsuccessful party or Parties, to the maximum extent allowable by law, reasonable attorney's fees and costs in connection with any enforcement actions.

## CONSTRUCTION

17. The Parties hereto agree that the terms and conditions of this Agreement are the result of arms-length negotiations among the Parties, and this Agreement shall not be construed in favor or against any party by reason of the extent to which any party or his, her or its counsel participated in the drafting of this Agreement.

## CAPTIONS AND INTERPRETATIONS

18. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof. Each term of this Agreement is contractual and not merely a recital.

## NO LEGAL ADVICE

19. No Party nor counsel for any Party has given or offered legal advice to any other Party, and nothing in this Agreement constitutes legal advice. Each Party has relied solely on legal advice from its own attorneys. To the extent that this Agreement, or any of its attachments, is interpreted to contain or constitute advice regarding any federal, state or local tax issue, such advice is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any tax liability or penalties.

## MODIFICATION

20. This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the parties.

## ENTIRE AGREEMENT

21. This Agreement contains the entire agreement between the Parties relating to the settlement contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are superseded by this Agreement. No rights hereunder may be waived except in writing. This is an integrated agreement.

## BINDING ON ASSIGNS

22. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

## CHOICE OF LAW AND ENFORCEABILITY

23. This Agreement shall be governed by and construed under the laws of the State of North Carolina, without regard to its rules regarding conflicts of laws.

24. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction, and such provision cannot be interpreted or modified so as to be enforceable, excluding the general release language in Paragraph 2, such provision shall immediately become null and void, leaving the remaining provisions of this Agreement in full force and effect. If, however, any portion of the general release language in Paragraph 2 is ruled to be unenforceable as to Plaintiffs in any action instituted by or on behalf of Plaintiffs, Plaintiffs shall return the Settlement Payments paid hereunder to Defendants.

## CONSULTATION AND LACK OF COERCION

25. Plaintiffs acknowledge that they have been advised in writing and offered the opportunity to discuss this Agreement and its content with their attorneys. Plaintiffs acknowledge that they have fully discussed this Agreement with their Attorneys with respect to the meaning and effect of the provisions of this Agreement, or have voluntarily chosen to sign this Agreement without consulting their attorneys, fully understanding the content, meaning, and legal effect and consequences of this Agreement. Plaintiffs further acknowledge that they are executing this Agreement voluntarily and free of any duress or coercion.

## COUNTERPARTS AND SIGNATURES

26. This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to the Parties and each of them. The Parties may sign this Agreement and exchange signed copies by fax, email, or other electronic means, each of which shall be as valid as an original.

_____  Dated: 2-22-2016
James Fezza

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I David Mondshane, a Notary Public of Mecklenburg County and State of North Carolina, do hereby certify that James Fezza ("Signatory") personally appeared before me this day, and; acknowledging to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated.

Witness my hand and official seal, this the 22 day of February, 2016.

_____
Notary Public

Print Name: David Mondshane
My Commission Expires: July 28, 2020

_____  Dated: 2/22/16
Kenneth May

> **DAVID MONDSHANE**
> Notary Public
> Mecklenburg Co., North Carolina
> My Commission Expires July 28, 2020

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I David Mondshane, a Notary Public of Mecklenburg County and State of North Carolina, do hereby certify that Kenneth May ("Signatory") personally appeared before me this day, and; acknowledging to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated.

Witness my hand and official seal, this the 22 day of February, 2016.

_____
Notary Public

Print Name: David Mondshane
My Commission Expires: July 28, 2020

> **DAVID MONDSHANE**
> Notary Public
> Mecklenburg Co., North Carolina
> My Commission Expires July 28, 2020

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I, Kimberly C. Dixon, a Notary Public of Mecklenburg County and State of North Carolina, do hereby certify that Jamil Nassar ("Signatory") personally came before me this day and acknowledged that he is President of GMMJ, INC., a North Carolina corporation, and that he, as President, being authorized to do so, executed the foregoing instrument on behalf of GMMJ, INC.

I certify that the Signatory personally appeared before me this day, and I have personal knowledge of the identity of the Signatory.

The Signatory acknowledged to me that he voluntarily signed the foregoing instrument for the purpose stated and in the capacity indicated.

Witness my hand and official stamp or seal this 23rd day of February, 2016

_____
Kimberly C. Dixon
Notary Public

Print Name: Kimberly C. Dixon
My Commission Expires: 1/30/2018

[Seal: Kimberly C. Dixon, Notary Public, Mecklenburg County, North Carolina, My Commission Expires 1/30/2018]

_____
Jamil Nassar

Dated: 2-23-16

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I Kimberly C. Dixon, a Notary Public of Mecklenburg County and State of North Carolina, do hereby certify that Jamil Nassar ("Signatory") personally appeared before me this day, and; acknowledging to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated.

Witness my hand and official seal, this the 23rd day of February, 2016.

_____
Kimberly C. Dixon
Notary Public

[Seal: Kimberly C. Dixon, Notary Public, Mecklenburg County, North Carolina, My Commission Expires 1/30/2018]

Print Name: Kimberly C. Dixon
My Commission Expires: 1/30/2018

Executed on the date(s) set forth below:

XPRESS GROUP, INC.

By: _____  Dated: 2-23-16
Name: Jamil Nassar
Title: President

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

I, Kimberly C. Dixon, a Notary Public of Mecklenburg County and State of North Carolina, do hereby certify that Jamil Nassar ("Signatory") personally came before me this day and acknowledged that he is President of XPRESS GROUP, INC., a North Carolina corporation, and that he, as President, being authorized to do so, executed the foregoing instrument on behalf of XPRESS GROUP, INC.

I certify that the Signatory personally appeared before me this day, and I have personal knowledge of the identity of the Signatory.

The Signatory acknowledged to me that he voluntarily signed the foregoing instrument for the purpose stated and in the capacity indicated.

Witness my hand and official stamp or seal this 23rd day of February, 2016

_____
Notary Public

Kimberly C. Dixon
Notary Public
Mecklenburg County
North Carolina
My Commission Expires 1/30/2018

Print Name: Kimberly C. Dixon
My Commission Expires: 1/30/2018

GMMJ, INC.

By: _____  Dated: 2-23-16
Name: Jamil Nassar
Title: President